**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paula Lynette Richardson,<br><br>   Plaintiff,<br><br>v.<br><br>Carolyn W Colvin,<br><br>   Defendant. | No. CV-15-01185-PHX-JZB<br><br>**ORDER** |

Plaintiff Paula Lynette Richardson seeks review of the Social Security Administration Commissioner's decision denying her application for disability and disability insurance benefits under the Social Security Act. (Doc. 1; Doc. 24.) For the reasons below, the Court will vacate the Commissioner's decision and remand this matter for further proceedings consistent with this Order.

**I.  Background**

On March 25, 2005, Plaintiff filed her first Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income.  (AR[1] at 174.)  Plaintiff alleged that her disability began on December 17, 2004. (*Id.*)  Plaintiff's claims were initially denied on August 5, 2005, and denied upon reconsideration on November 18, 2005.  (*Id.*)  In a June 2007 decision, an ALJ found Plaintiff was not entitled to disability insurance or supplemental social

---

[1] Citations to "AR" are to the administrative record.

security benefits.[2]  (*Id.* at 26, 174-80.)

On April 20, 2011, Plaintiff filed applications for a period of disability and disability insurance benefits, as well as supplemental social security benefits, alleging an onset date of February 28, 2008.  (*Id.* at 262-65.)  On October 7, 2011, the Social Security Administration denied Plaintiff's applications.  (*Id.* at 26.)  On June 29, 2012, the Social Security Administration denied Plaintiff's request for reconsideration with regard to her application for disability and disability insurance benefits.  (*Id.*)  On July 30 2012, the Commissioner found Plaintiff eligible for supplemental social security benefits.  (*Id.* at 199.)

Pursuant to Plaintiff's request, a hearing was held on January 16, 2013, before ALJ Claudia L Rosen-Underwood (the ALJ) regarding Plaintiff's application for disability and disability insurance benefits.  (*Id.* at 26-43.)  In a decision dated August 30, 2013, the ALJ found that Plaintiff "was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2011, the last date insured."[3]  (*Id.* at 43.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner of the Social Security Administration.  (*Id.* at 1-4.)

Having exhausted the administrative review process, on June 26, 2015, Plaintiff

---

[2] The ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus, new onset neuropathy, and mood disorder. (*Id.* at 176.)  The ALJ found Plaintiff had the residual functional capacity to perform sedentary work. (*Id.* at 177.) The ALJ further found that Plaintiff would still be capable of performing her past relevant work as a telephone sales representative, secretary, and data entry specialist.  (*Id.* at 180.)

[3] In her decision, the ALJ found that Plaintiff rebutted the presumption of continuing non-disability after the previous unfavorable ALJ decision because Plaintiff "alleged worsening of her pain and demonstrated she was being treated for carpal tunnel syndrome and cervical radiculopathy, with a new diagnosis of anxiety disorder," which constitute a changed circumstance, and Plaintiff "underwent several consultative examinations at the request of the State agency. . . which constitute new and material evidence." (*Id.* at 27.)  Therefore, the ALJ made new findings based on all of the pertinent evidence. (*Id.*); *see also Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) ("The claimant, in order to overcome the presumption of continuing non-disability arising from the first administrative law judge's findings of non-disability, must prove 'changed circumstances' indicating a greater disability.").

sought judicial review of the ALJ's decision by filing a Complaint in this Court pursuant to 42 U.S.C. § 405(g).  (Doc. 1.)  On December 11, 2015, Plaintiff filed an Opening Brief, seeking remand of this case to the Social Security Administration, alleging that the ALJ ignored the opinions of certain examining and non-examining physicians.  (Doc. 24 at 8-11.)  Plaintiff alleges that those doctors' opinions limit Plaintiff to simple, repetitive tasks and one- to two-step instructions.  (*Id*.)  On January 11, 2016, Defendant filed a Response Brief in support of the Commissioner's decision.  (Doc. 26.)  On January 25, 2016, Plaintiff filed a Reply Brief.  (Doc. 27.)

## II.   Legal Standards

### a.  Standard of Review

The Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's disability benefits determinations. The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990).  "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum

of supporting evidence.'" *Orn*, 495 F.3d at 630 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Similarly, the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

### b. The ALJ's Five-Step Evaluation Process

To be eligible for Social Security benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A person is under a disability only:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process to determine whether an applicant is disabled under the Social Security Act:

> The five-step process for disability determinations begins, at the first and second steps, by asking whether a claimant is engaged in "substantial gainful activity" and considering the severity of the claimant's impairments. *See* 20 C.F.R. § 416.920(a)(4)(i)-(ii). If the inquiry continues beyond the second step, the third step asks whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1 and meets the duration requirement. *See id.* § 416.920(a)(4)(iii). If so, the claimant is considered disabled and benefits are awarded, ending the inquiry. *See id.* If the process continues beyond the third step, the fourth and fifth steps consider the claimant's "residual functional capacity" in determining whether the claimant can still do past relevant work or make an adjustment to other work. *See id.* § 416.920(a)(4)(iv)-(v).

*Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). "The burden of proof is on the

claimant at steps one through four, but shifts to the Commissioner at step five." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

Applying the five-step evaluation process, the ALJ found that Plaintiff was not disabled from the time period of February 28, 2008 (the alleged onset date) to December 31, 2011 (the last date insured), and is not entitled to benefits. (AR at 29-43.) At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from the alleged onset date through her last date insured. (*Id.* at 29.) At step two, the ALJ found that Plaintiff had the following severe impairment: insulin dependent diabetes mellitus with peripheral neuropathy. (*Id.* at 30.) The ALJ found that Plaintiff's other alleged mental and physical impairments did not cause more than a minimal limitation in basic work activities and, therefore, were not severe. (*Id.* at 30-33.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). (*Id.* at 33.)

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a). (*Id.* at 33.) The ALJ further determined that Plaintiff is unable to perform any of her past relevant work. (*Id.* at 42.) Finally, at step five, the ALJ found that the Medical-Vocational Rules support a finding that Plaintiff is not disabled, and "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (*Id.*) The ALJ also found that Plaintiff could have performed work as a telephone solicitor. (*Id.*) Given those findings, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from" the alleged onset date through the last date insured. (*Id.* at 43.)

**III.   Analysis**

Plaintiff alleges that the ALJ did not explain the weight given to the opinions of:

(1) consultative examining physicians Dr. Steingard and Dr. Mansfield; and (2) State agency non-examining physicians Dr. Campbell and Dr. Pereyra. (Doc. 24 at 8-11.) Below, the Court addresses Plaintiff's argument.

### a. Legal Standard

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining *or* a treating physician." *Lester*, 81 F.3d at 831 (emphasis in original).

### b. The ALJ did not err in giving partial weight to the opinions of Dr. Steingard and Dr. Mansfield.

#### i. Dr. Steingard's and Dr. Mansfield's Opinions

Dr. Steingard met with Plaintiff on July 16, 2009, in connection with Plaintiff's new applications for disability benefits. (AR at 492.) Dr. Steingard conducted a

- 6 -

psychological exam of Plaintiff and completed a Psychological/Psychiatrist Medical Source Statement. (*Id.* at 492-96.) Dr. Steingard opined that Plaintiff's understanding and memory were grossly intact, but Plaintiff would have some problems with concentration when she experiences episodes of panic, which occur weekly and last half an hour. (*Id.* at 495-96.) Dr. Steingard further opined that repetitive behaviors would slow Plaintiff's pace; however, cognitively, Plaintiff is able to perform a variety of tasks of varying complexity and will only have mild limitations during her episodes of depressed mood. (*Id.* at 496.) Dr. Steingard found that Plaintiff scored 30 out of 30 on her Mini Mental State Exam. (*Id.* at 494.) Finally, Dr. Steingard opined that Plaintiff's social interaction would be mildly affected by a depressed mood and that socialization is not precluded. (*Id.* at 496.)

Dr. Mansfield completed a Psychological Report and Psychological/Psychiatric Medical Source Statement on September 22, 2011. (*Id.* at 610-15.) Based on his evaluation, Dr. Mansfield opined that Plaintiff's understanding was fair and her intellect was in the low average range. (*Id.* at 615.) Plaintiff underwent a Mini-Mental State Examination, and scored a 26 out of 30, indicating that Plaintiff may have problems with memory. (*Id.*) Dr. Mansfield noted that Plaintiff was deemed capable of understanding and remembering simple instructions but would need close supervision and direction for complex instructions and work-like procedures. (*Id.*) Dr. Mansfield opined that Plaintiff's lack of motivation is present because of pain and Plaintiff would experience difficulty in maintaining attention and concentration for an extended period of time. (*Id.*) Dr. Mansfield further opined that based on Plaintiff's previous work in people-orientated positions, she would not be expected to have difficulties in relating to coworkers and supervisors, and is capable of adhering to basic standards of neatness. (*Id.*) Finally, Dr. Mansfield noted that no issues relating to Plaintiff's capability of adapting to change on the job were raised during their meeting or by the records provided. (*Id.*)

### ii. Analysis

Plaintiff argues that the ALJ erred by "omit[ing] . . . the statement by Dr.

Steingard that [Plaintiff] had repetitive behaviors that would slow her pace and that she would have difficulty maintaining performance during episodes of panic." (Doc. 24 at 9.) Plaintiff further argues that the ALJ committed error by failing to explain the weight given to Dr. Mansfield's opinion that Plaintiff needed additional supervision for complex or detailed tasks with some difficulty maintaining persistence and pace, and she had difficulty maintaining attention and concentration for extended periods.[4] (*Id.*) As detailed below, the Court disagrees.

The ALJ gave "some weight" to the opinions of Dr. Steingard and Dr. Mansfield, finding that their "collective opinions are generally consistent with the greater evidence of record." (AR at 32.) However, the ALJ found that Plaintiff's "reported activities of daily living during the period of February 2008 through December 2011, reflect a higher level of functioning, especially with regards to the ability to concentrate, focus, pay attention, and persist at tasks, demonstrated by her ability to provide childcare for her grandchildren in 2008 and 2009." (*Id.*) The ALJ noted the following:

> Through the date last insured, [Plaintiff] was independent with her personal care and hygiene. She lived with family, including her six children. She was capable of preparing simple meals, doing some household chores, occasionally attending church events, managed her own money, and performed independent childcare services up until February 2009 for three young children, including an infant. The claimant watched television, did a little reading, listened to music, and was able to take her children (grandchildren) to the park and play with them. She reported she helped get her youngest (8-year-old) ready for school, walked her to school, picked her up from school, and helped with homework. The claimant also researched on the computer for jobs (Exhibits B1F, B13F, and Exhibit B22E).

(*Id.*)

After discussing Plaintiff's daily activities in detail, the ALJ cited to other medical evidence in the record, including "normal mental status examinations, with no overt signs

---

[4] Importantly, Plaintiff does not challenge or address the specific reasons the ALJ provided for giving partial weight to the opinions of Dr. Steingard and Dr. Mansfield. (*See* Doc. 24.) Instead, Plaintiff argues only that the ALJ failed to sufficiently explain those reasons, and generally failed to give "specific and legitimate reasons for rejecting any of [the] medical [opinion] evidence." (*Id.* at 8-10.)

of anxiety or depression, alert and oriented, and intellect grossly intact; mentally alert, no delusions, hallucinations, or behavior problem[s]." (*Id.* at 32-33.) The ALJ also specifically concluded that Plaintiff was only mildly limited in the area concentration, persistence, and pace. (*Id.* at 32.) In support of that conclusion, the ALJ found "Plaintiff experienced intermittent periods of distractibility, secondary to pain. However, she was capable of understanding, remembering, and carrying out simple and complex instructions and work tasks. Additionally, her scores on the mental status examination[s] of 30/30 and 26/30 were not indicative of significant cognitive deficits." (*Id.*) Finally, the ALJ noted Plaintiff reported to Dr. Mansfield that she received no formal mental health treatment. (*Id.* at 31.)

As Plaintiff notes, "[t]he ALJ must explain the weight given to all medical opinion evidence." (Doc. 1 at 9); 20 C.F.R. § 404.1527(e)(2)(ii). However, the ALJ explained the reasons for giving less weight to Dr. Steingard's and Dr. Mansfield's opinions regarding concentration, persistence, and pace. First, the ALJ found that although "their collective opinions are generally consistent with the greater evidence of record," the reported activities of daily living indicated a "higher level of functioning, especially with regards to the ability to concentrate, focus, pay attention, and persist at tasks." (AR at 32.) The Ninth Circuit has ruled that "the mere fact that a plaintiff has carried on certain daily activities such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (internal quotations omitted). However, if a plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a [plaintiff's] allegations." *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ sufficiently made findings regarding Plaintiff's daily activities, and sufficiently explained the basis for giving Dr. Steingard's and Dr. Mansfield's opinions

1   "some weight" based on those activities. The ALJ noted that Plaintiff provided childcare
2   for her three grandchildren, ages one-year old, two-years old, and an infant, on a daily
3   basis, and, her position as a childcare provider only ended in February 2009 because the
4   person she was working for moved away. (AR at 32, 36, 351.) The ALJ took into
5   consideration the fact that Plaintiff was responsible for the children's well-being and
6   safety, providing their meals, teaching them the alphabet, changing their clothing, and
7   Plaintiff reported that her mental impairments did not affect her ability to care for the
8   youngest child. (*Id.* at 32, 398-99.) Based on these findings, the ALJ appropriately gave
9   only partial weight to the opinions of Dr. Steingard and Dr. Mansfield. *See Rollins v.*
10  *Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming the ALJ's rejection of a
11  Plaintiff's symptom testimony in part due to her daily activities, including attending to
12  "all of [her] children's needs; meals, bathing, emotional, discipline, etc.").

13  Second, the ALJ found that Plaintiff's performance on her mental status exams,
14  administered by Dr. Steingard and Dr. Mansfield, and other medical evidence in the
15  record, were probative of her actual functional abilities. (*Id.* at 32, 494, 613.) In addition
16  to the exam scores, the ALJ cited to "normal mental status examinations, with no overt
17  signs of anxiety or depression, alert and oriented, and intellect grossly intact; no
18  delusions, hallucinations, or behavioral problem[s]." (*See, e.g.*, *id.* at 32, 505, 513, 520,
19  535, 594, 596.) Inconsistency with other clinical findings and medical records is a
20  sufficient reason for giving less weight to the opinions of examining sources. *Morgan v.*
21  *Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

22  Finally, the ALJ noted that "while the medical record establishes [Plaintiff] had
23  been diagnosed with anxiety disorder, depressive disorder, and obsessive-compulsive
24  disorder, [Plaintiff] did not seek out any type of formal mental health treatment during
25  the relevant period," nor did she report or complain of any mental limitations at the
26  hearing. (AR at 30.) The ALJ did not err in relying on Plaintiff's lack of treatment in
27  giving Dr. Steingard's and Dr. Mansfield's opinions partial weight. *See Chaundhry v.*
28  *Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (finding the ALJ did not error in rejecting

examining opinions based on conflicting medical opinions and a failure to seek treatment). Accordingly, the Court finds that the ALJ explained her reasons for giving only partial weight to Dr. Steingard's and Dr. Mansfield's opinions, and those reasons are specific, legitimate, and supported by substantial evidence.

### c. The ALJ committed harmful error in failing to consider and discuss Dr. Campbell's non-examining opinions.

Plaintiff also alleges that the ALJ erred by failing to discuss Dr. Campbell's opinions. (Doc. 24 at 9.) The ALJ gave considerable weight to the opinions of another non-examining physician, Dr. Yandell. (AR at 33.) However, the ALJ mistakenly cited to Exhibit B3A as part of her reasoning for assessing Dr. Yandell's conclusions. (*Id.*) Exhibit B3A contains the non-examining opinions of Dr. Campbell, rather than opinions provided by Dr. Yandell. (*Id.* at 101-02, 105-06.) Dr. Campbell's non-examining report states that "[Plaintiff] alleged stress, anxiety[,] and depression." (*Id.* at 102.) Further, Dr. Campbell opined that Plaintiff is limited to short/simple, repetitive tasks, "can learn and remember basic work instructions and tasks of 1-2 steps," "can follow a schedule, make decisions and complete basic work tasks on a consistent basis," "can work with and around others," and "can adapt to changes and handle the normal stressors of full time employment." (*Id.* at 106.)

The parties agree that the ALJ failed to discuss Dr. Campbell's opinions, which were issued on September 28, 2011. (*Id.* at 105-06.) Defendant asserts that the ALJ's failure to specifically discuss Dr. Campbell's opinions is not harmful error affecting the outcome of the case because his opinions are identical to the opinions of another non-examining source, Dr. Pereyra, and one of the ALJ's reasons for giving Dr. Pereyra's opinions less weight applies equally to Dr. Campbell's opinions.[5] (Doc. 26 at 10.) In her Reply, Plaintiff argues "[t]he the Court cannot confidently conclude that the ALJ would have reached the same assessment of all medical opinions when considering Dr.

---

[5] The ALJ gave Dr. Pereyra's opinions "[l]ess weight" because: (1) she found the limitations opined by Dr. Pereyra conflicted with Plaintiff's daily activities; and (2) Dr. Pereyra's opinions were rendered after the last date insured. (*Id.* at 33.)

Pereyra['s]" opinions in conjunction with Dr. Campbell's opinions. (Doc. 27 at 3.)

The Court cannot determine based on this record how the ALJ would have weighed Dr. Campbell's opinions regarding limitations to simple, repetitive tasks, and one- to two-step instructions, had the ALJ specifically been aware of and addressed those opinions. Although the ALJ gave little weight to Dr. Pereyra's opinions, which were identical to Dr. Campbell's opinions, the ALJ did so, in part, based on the fact that Dr. Pereyra rendered her opinions several months after the last date insured. (AR at 33.) Dr. Campbell's opinions, however, were issued prior to the last date insured and approximately two years after Dr. Yandell issued his opinions.[6] (*Id.* at 106, 1324-36.) Further, as Plaintiff notes, the Court cannot determine whether the ALJ would have weighed Dr. Campbell's opinions differently when analyzed in conjunction with Dr. Pereyra's opinions.

Defendant further argues that the ALJ's error was harmless because Dr. Campbell's opinions would not "significantly erode the occupational base of sedentary work and undermine the ALJ's use of the Medical-Vocational Guidelines at step five." (Doc. 26 at 10.) "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the" Guidelines. *Tackett*, 180 F.3d at 1099.

> The Guidelines present, in *table form*, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The grids categorize jobs by their physical-exertional requirements and consist of three separate tables — one for each category: "maximum sustained work capacity limited to sedentary work," "maximum sustained work capacity limited to light work," and "maximum sustained work capacity limited to medium work." 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00. Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the grids are the claimant's age, education, and work experience. For each combination of these factors, e.g., fifty years old, limited education, and unskilled work

---

[6] Dr. Yandell issued his opinions regarding Plaintiff's functional limitations on August 3, 2009. (*Id.* at 1324-36.)

- 12 -

>experience, the grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. *See id.*

*Id.* at 1101 (emphasis in original; footnote omitted).

The Commissioner may rely on the Guidelines "where they *completely and accurately* represent a claimant's limitations. *Id.* (emphasis in original) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). "In other words, a claimant must be able to perform the *full range* of jobs in a given category, i.e., sedentary work, light work, or medium work." *Id.* (emphasis in original). "When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, . . . or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

Here, the Court cannot determine whether the ALJ's decision at step five is supported by substantial evidence in light of the ALJ's error at step two in evaluating Dr. Campbell's opinions. The ALJ found that:

>Through the last date insured, the claimant had the residual functional capacity to perform the full range of sedentary work and a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21 and Medical-Vocation Rule 201.22. The claimant could also perform the work as telephone solicitor based on the vocational expert's testimony.

(AR at 43.) First, there appears to be a conflict between any limitations to simple, repetitive work and one- to two- step instructions, on one hand, and a telephone solicitor position, DOT #299.357-014, which is sedentary and *semi*-skilled, on the other. Therefore, the Court cannot find the ALJ's conclusion that Plaintiff could perform work as a telephone solicitor is supported by substantial evidence even if Dr. Campbell's opinions are credited as true. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) ("When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation

involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency.").

Second, it is unclear whether Dr. Campbell's opinions, if considered and accepted by the ALJ in conjunction with the other medical evidence, would have impacted the ALJ's analysis at steps four and five. Although, as Defendant notes, there may be sedentary unskilled work available that Plaintiff could perform, the addition of a non-exertional limitation requires the ALJ to make specific findings as to whether, using the Grids as a framework or relying on vocational expert testimony, sufficient work exists that Plaintiff can perform. *Holohan v. Massanari*, 246 F.3d 1195, 1208-09 (9th Cir. 2001) (finding legal error where the ALJ assessed the plaintiff could perform work at all exertional levels, but was limited to "at least simple, repetitive type work," and the ALJ relied entirely on the Grids to conclude that Plaintiff was not disabled.). Here, because the ALJ found at step two that Plaintiff's mental impairments were not severe, the ALJ did not assess the work Plaintiff could have performed if Plaintiff had non-exertional limitations, including limitations to simple, repetitive tasks and one- to two-step instructions. Based on this record, the Court "cannot determine whether substantial evidence supports the ALJ's step-five finding that" Plaintiff is not disabled. *Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007); *see also Garrison*, 759 F.3d at 1010 (the Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Therefore, the ALJ's error was not harmless.[7]

**IV. Remedy**

The remaining issue is the appropriate remedy in light of the ALJ's harmful error. Plaintiff argues that the Court should credit as true Dr. Campbell's opinions as a matter of law. (Doc. 24 at 10-11.) However, in her Reply, Plaintiff asserts that whether the

---

[7] Because the Court finds that the ALJ committed harmful legal error in failing to address Dr. Campbell's opinions, and, as detailed below, remand for further proceedings is appropriate, the Court does not separately address the ALJ's treatment of Dr. Pereyra's identical opinions.

- 14 -

occupational base constitutes a significant number of jobs, if the ALJ were to find Plaintiff was limited to simple, repetitive work and one- to two-step instructions, is "an unanswered question." (Doc. 27 at 3.) Defendant argues that this case should be remanded for further proceedings, instead of for an award of benefits, because "[t]here is no indication that, if credited, the opinions of [Dr. Campbell] would lead to a finding of disability." (Doc. 26 at 12.)

When determining the appropriate remedy, the Court follows the following analysis:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. *Id.* If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and "all essential factual issues have been resolved." *Treichler*, 775 F.3d at 1101. In conducting this review, the district court must consider whether there are "inconsistencies between [the claimant's] testimony and the medical evidence in the record," *id.* at 1105, or whether the government has pointed to evidence in the record "that the ALJ overlooked" and explained "how that evidence casts into serious doubt" the claimant's claim to be disabled, *Burrell*, 775 F.3d at 1141. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits. *Id.*
>
> If the district court does determine that the "record has been fully developed," *id.*, and there are no outstanding issues left to be resolved, the district court must next consider whether "the ALJ would be required to find the claimant disabled on remand" if the "improperly discredited evidence were credited as true." *Id.* (quoting *Garrison*, 759 F.3d at 1020).
>
> . . . .
>
> "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." *Treichler*, 775 F.3d at 1106. "In particular, we may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act'" *Burrell*, 775 F.3d at 1141 (quoting *Garrison*, 759 F.3d at 1021); *see also Connett*, 340 F.3d at 874-76 (finding that a reviewing court retains discretion to remand for further proceedings even when the ALJ fails to "assert specific facts or reasons to reject [the claimant]'s testimony"). Only when all factual issues in the

> record have been resolved, overwhelming evidence establishes that the claimant is disabled, and the government points to no evidence to the contrary, have we held a district court abused its discretion in failing to remand for benefits. *See Garrison*, 759 F.3d at 1022.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015).

The Court finds that remand for further proceedings is appropriate here. First, further administrative proceedings would be useful. There are conflicts between the medical evidence in the record regarding Plaintiff's mental impairments that the ALJ must resolve before making a disability determination. Dr. Yandell's opinions, although issued earlier, contradict the limitations opinioned by Dr. Campbell and Dr. Pereyra. The ALJ provided reasons for giving less weight to Dr. Pereyra's opinions, but not all of those reasons apply to Dr. Campbell's opinions. Further, some of Dr. Steingard's findings and opinions contradict Dr. Campbell's and Dr. Pereyra's opinions, including Plaintiff's 30 out 30 score on her mental status exam and Dr. Steingard's opinion that Plaintiff is able to follow directions of varying complexity. And, as discussed above, the ALJ failed to address Dr. Campbell's opinions. Therefore, the Court finds there are sufficient issues and gaps that must be resolved and addressed by the ALJ to require a remand for further proceedings. Further, as Plaintiff concedes, even if Dr. Campbell's (and Dr. Pereyra's) opinions are credited as true, the ALJ would not be required to find Plaintiff disabled. In light of these issues, an immediate award of benefits is not appropriate. *See id.* at 409 ("If such outstanding issues do exist, the district court cannot deem the erroneously disregarded testimony to be true; rather, the court must remand for further proceedings."); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015) ("The touchstone for an award of benefits is the existence of a disability, not the agency's legal error.").

The Ninth Circuit has "[w]ithout adopting a general rule," also "recognized that there are other factors which may justify application of the credit-as-true rule, even where application of the rule would not result in the immediate payment of benefits," including whether Plaintiff was "of advanced age and had already experienced severe delay in in

- 16 -

1 her application." *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009). However, the Court does not find those factors present here. Plaintiff does not argue otherwise. Therefore, the Court will deny Plaintiff's request to credit Dr. Campbell's opinions as true on remand.[8]

Based on the above, the Court will vacate the Commissioner's decision and remand this matter for further proceedings. On remand, the ALJ shall reevaluate the medical opinion evidence regarding Plaintiff's mental impairments at step two and, if appropriate, reevaluate Plaintiff's RFC at step four and whether Plaintiff was able to do any other work at step five.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is vacated and this case remanded to the Social Security Administration for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this action.

Dated this 9th day of September, 2016.

Honorable John Z. Boyle
United States Magistrate Judge

---

[8] Plaintiff also states in her Opening Brief that "[t]he remedy sought here rests on the recognition that [Plaintiff] is in pay status on her SSI claim. . . . . The benefit to [Plaintiff] is not more benefit per month but some retroactive benefits and access to Medicare instead of the state Medicaid benefit." (Doc. 24 at 11.) Plaintiff's argument is not clear. However, to the extent Plaintiff is arguing that she should receive an immediate award of benefits in this case because she was found disabled as of June 2012, six months after the last date insured (AR at 199), the Court rejects that argument. Plaintiff has failed to set forth any factual or legal basis in this case for an immediate award of benefits for the time period prior to Plaintiff's last date insured based on the June 2012 finding.